(No. 36818.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NATHANIEL TATE, Plaintiff in Error.

*Opinion filed February 1, 1963.*

SIDNEY C. HAMPER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:.

Nathaniel Tate was indicted in the criminal court of Cook County for the crimes of rape and armed robbery. A jury was waived, the court found him guilty as charged and sentenced him to the penitentiary for a term of 1 to 5

years on the robbery count and for a term of 15 years on the rape count. He prosecutes this writ of error to review the convictions.

On November 2, 1960, the prosecutrix was separated from her husband and lived with her two children at her mother's home. About 11:55 that evening she went alone in her own car to a night club on the west side of Chicago. She sat at the bar with a group of people, one of whom was defendant. She drank beer and danced but not with defendant. About 4:00 A.M. she left with Lula Bell Williams, a girl friend, Bennie Turner, a musician at the club, and defendant. Lula Bell and Turner rode in the back seat of her car and she and defendant rode in front. They drove west on Roosevelt Road to about the 3900 block where Lula Bell and Turner got out. She then drove down an alley to the back of a restaurant where defendant worked. They went into the rear of the building where they had sexual intercourse and defendant took some money from her pocket book. The question presented is whether the intercourse was without her consent and whether the money was taken by force or intimidation.

The prosecutrix testified that she had stopped the car at the 3900 block on Roosevelt Road when defendant put a gun to her head and told her to turn on to Springfield and then into an alley. When they were about a quarter of a block in the alley, he ordered Lula Bell and Turner to get out. He then ordered her to drive another quarter or half of a block down the alley where they parked and entered the rear of the restaurant. She said he held the gun in his hand while the sexual act took place. After that he opened her purse and took $14. When they were about to leave, she said defendant ordered her to take two cartons of soda pop with her. Defendant then drove to the 1900 block on Springfield. He stopped there, threatened to kill her if she told any one of the incident and asked for her phone number. She gave him the correct number and he left.

She went home and went to bed. On November 4 she reported to the police that she had been raped and robbed.

Lula Bell Williams testified that defendant pulled a gun and forced her and Turner to get out of the car after they had driven into the alley. She and Turner then walked to a gas station and called the police. They did not wait for the police but went to the home of Arthur Brown, the prosecutrix's brother. He drove them to the alley and they looked in the alley but did not enter it. Lula Bell says she again called the police but again they did not wait for them. Brown then drove Lula Bell and Turner to their homes. Turner's testimony was substantially the same as that of Lula Bell.

The defendant testified that when the prosecutrix got to the 3900 Block on Roosevelt Road, Lula Bell said she and Turner wanted to be let out so they could get some coffee. They got out and the prosecutrix drove to the rear of the restaurant. When they were inside, she said that she had two children, that she had been out all night and had not made any money and that she needed $20. He gave her $20 and they had intercourse. While she was in the bathroom, defendant looked in her purse and discovered she had $6 beside the $20 he had given her so he took the $20. When they were about to leave, she asked if she could take two cartons of orange soda pop home for her children. He said yes and she took the soda. When they got to the 1900 block on Springfield, he stopped and she asked if he would co-sign a note for her so she could get another car. He said he would think about it and call her the next night. She then gave him her phone number.

While we are most reluctant to disturb the resolution of a conflict in the testimony by the trier of fact, we believe that the surrounding circumstances in this case tend to support the testimony of the defendant rather than that of the prosecuting witnesses.

The prosecutrix after allegedly being raped and robbed went home and went to bed. There is nothing to show that she complained to her mother and she did not complain to the police until early in the morning of November 4. As was said in *People* v. *McKinzie,* 18 Ill.2d 44, "While the fact that prosecutrix was not bruised or damaged physically, or that she appeared to have become reconciled to the situation rather quickly, does not destroy the validity of the rape charge, it does bear upon its credulity." (18 Ill.2d 44, 46.) Another circumstance to be considered is that the prosecutrix testified that she did not have anything to do with defendant at the night club and yet she does not seem to have tried to avoid him when he left with her at 4:00 A.M. and rode in the front seat of her car. Still another circumstance is the two versions of why she took the soda pop. It seems most unlikely that a man who has just raped and robbed a woman should order her to take some soda pop. His version that she wanted it for her children is more plausible.

Lula Bell and Turner testified that they called the police twice, yet there is nothing to show that the police received any calls. If such a call had been made the police would probably have been able to capture defendant while he was still in the alley. They did not wait for the police, and when they were supposedly searching with the brother, they say they did not even enter the alley. They knew the defendant but did not check his house or the prosecutrix's house to see if they had gotten home.

We are of the opinion that the People failed to prove beyond a reasonable doubt that the sexual intercourse was without the consent of the prosecutrix or that the money was taken from her purse by force or intimidation. The judgments of the criminal court of Cook County are accordingly reversed.

*Judgments reversed.*